<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAWRENCE JAMES BOSS, | : | |
| | : | Civil Action No. 10-2396 (JLL) |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CHRIS CHRISTIE, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> LAWRENCE JAMES BOSS, Plaintiff <u>pro</u> <u>se</u>
> #000220 North House
> Special Treatment Unit
> CN-905
> Avenel, New Jersey 07001

**LINARES**, District Judge

Plaintiff, Lawrence James Boss, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), <u>N.J.S.A.</u> 30:4-27.24, <u>et</u> <u>seq.</u>, seeks to bring this action <u>in forma pauperis</u>.  Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint,[1] pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be

---

[1]  Plaintiff filed an addendum to his Complaint on or about June 18, 2010.  <u>See</u> Docket entry no. 3.

dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed without prejudice at this time.

## I.   BACKGROUND

Plaintiff, Lawrence James Boss ("Boss"), brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: Chris Christie, the Governor of New Jersey; Paula Dow, Attorney General for the State of New Jersey; Gary Lanigan, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Jennifer Velez, Commissioner of the New Jersey Department of Human Services ("NJDHS"); Steven Johnson, NJDOC Administrator; and Merril Main, NJDHS Administrator.  (Complaint, Caption and ¶¶ 4b-4g).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Boss alleges that, on April 14, 2010, he attended a community meeting, held at the Northern Regional Unit ("NRU") in Kearny, New Jersey, to discuss a proposed transfer of the NRU residents to the East Jersey State Prison ("EJSP") in Rahway, New

Jersey.[2]  The meeting was conducted by defendant Steven Johnson.

Johnson told the residents that, on or about May 10th through May

15th, the residents would be transferred to the EJSP and housed

in the administrative segregation unit ("Ad Seg Unit").  On April

28, a memo was issued to the residents informing them that their

new mailing address would be in Avenel, New Jersey, rather than

Rahway, New Jersey where EJSP is located.  Accordingly, all mail

---

[2]  The transfer of the NRU residents at the Kearny facility
has been the subject of newspaper articles and a recent
application for injunctive relief in a pending civil case in this
District Court, Alves, et al. v. Ferguson, et al., Civil Action
No. 01-cv-0789 (DMC)(MF)(Consolidated).  This Court refers to the
Opinion issued by the Honorable Dennis M. Cavanaugh, U.S.D.J., in
the Alves case, on March 29, 2010, in which Judge Cavanaugh
denied injunctive relief.  (See Docket entry no. 115).  In Alves,
the residents moved to have the Court order that (a) the resident
population at the Annex (another NJDOC facility in New Jersey)
not be increased without leave of Court; and (b) the State of New
Jersey must provide residents' counsel with at least 30 days
notice of any proposed transfer to allow the residents an
opportunity to seek Court intervention, if necessary.
Specifically, for purposes of factual background in this action,
Judge Cavanaugh noted that, "[p]ursuant to County of Hudson v.
State of New Jersey, the State of New Jersey is required to turn
over the premises of the [Kearny] facility to the County of
Hudson by May 19, 2010.  See 2009 N.J. Super Unpub. LEXIS 1188,
at *19 (N.J. Super. A.D.).  Accordingly, the State must locate
another temporary or permanent facility to house the SVPs
currently living there."  (March 29, 2010 Opinion, Docket entry
No. 115, at pg. 2).  Judge Cavanaugh further noted that a
February 3, 2010 newspaper article had reported that the
residents of the Kearny facility were to be relocated to the
Special Treatment Unit "Annex" in Avenel, New Jersey, located on
or near the grounds of the East Jersey State Prison.  However, by
the time the briefing on the residents' motion was completed, it
had been confirmed that another location had been selected,
namely, the administrative segregation unit in East Jersey State
Prison itself.  (March 29, 2010 Opinion, Docket entry No. 115, at
pg. 4).

3

will be delivered first to Avenel before being given to the residents.  The new address was scheduled to take effect on May 10, 2010.  (Compl., "Statement of Claims" at ¶ 6).

In an addendum filed on June 18, 2010, Boss further alleges that the Ad Seg Unit at EJSP has unsanitary and unhealthy conditions that violate his constitutional rights.  In particular, Boss alleges that on May 3, 2010, he had heard that the Occupational Safety and Health Administration ("OSHA") had inspected and failed the kitchen area at the EJSP Ad Seg Unit. Boss states that the showers are mildewed, there is no workable air conditioning and that the unit smells like sewer waste. Despite these alleged conditions, the NJDOC staff transferred the heating table, dishwasher, and other kitchen equipment to the EJSP Ad Seg Unit on May 4, 2010.  On May 5, 2010, the residents were told to prepare the refrigerator and microwave for transfer. In addition, residents were told that the EJSP Ad Seg Unit is not "fit" for therapy.  (Addendum at Docket entry no. 3).

On May 6, 2010, Administrator Johnson allegedly told the residents that he knows their rights are being violated but that they are concerned only with transferring the residents to EJSP and the NJDHS and NJDOC will deal with any problems as they occur once the transfer is completed.  (Id.).

On May 7, 2010, a corrections officer issued plastic bags to the residents for packing their bed linens.  The residents

4

allegedly were told that prison guards would be on "stand-by" to "correct any problems pertaining to complaints towards the living conditions" at EJSP.  (Id.).

On May 7, 2010, Sgt. Smith told the residents that the water is not drinkable and the water system at EJSP Ad Seg Unit has to be checked for metal and bacteria.  Smith also stated the ventilation does not work properly at the Ad Seg Unit, so it gets really hot inside when the weather is hot outside, and really cold in the winter.  (Id.).

Boss complains that, as a civilly committed person, he should not be housed in a prison facility.  He further complains that he will be housed in the administrative segregation unit, which is a 23-hour lock-down unit, where the living conditions are unhealthy and unsanitary.  Boss asserts that this transfer is a violation of his constitutional rights.  He further complains that the interference with his mail violates his constitutional rights.  (Compl., ¶ 6).

Boss asks that he be provided with "the proper treatment of a federally funded facility."  He also seeks an unspecified amount in compensatory damages for the mental anguish and stress that he is suffering in being transferred to a prison facility. (Compl., ¶ 7).

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

A district court is required to review a complaint in a civil action where the litigant is proceeding <u>in forma pauperis</u>. Specifically, the court is required to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B).  Accordingly, because Boss is proceeding <u>in forma pauperis</u> in this matter, this action is subject to <u>sua sponte</u> screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007)(following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)).  <u>See also</u> <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319,

6

325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights. Id. The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

7

Fed.R.Civ.P. 8(a)(2).[3]  Citing its recent opinion in Bell

Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the

proposition that "[a] pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting

Twombly, 550 U.S. at 555), the Supreme Court identified two

working principles underlying the failure to state a claim

standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."  Fed.
> Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

---

    [3]  Rule 8(d)(1) provides that "[e]ach allegation must be
simple, concise, and direct.  No technical form is required."
Fed.R.Civ.P. 8(d).

8

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[4] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].

---

[4]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).  Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.  SECTION 1983 ACTIONS

Boss brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.   THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 *et seq.*, provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators."  N.J.S.A. 30:4-27.34(d).

11

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  Id.  The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual review hearings.  N.J.S.A. 30:4-27.35.  A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

## V.  ANALYSIS

### A.  Transfer to Prison Facility Claim

The principal claim asserted in Boss's Complaint is that his transfer to a prison facility, as a civilly committed person under the SVPA, is unconstitutional.  Boss seeks to prevent his transfer accordingly.

In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme Court of the United States examined the conditions of confinement provided by Kansas' Sexually Violent Predator Act.  The Act

12

called for the confinement of sexually violent predators in a
secure facility because they were dangerous to the community.
Id., 521 U.S. at 363-64.  Pertinent here, the Supreme Court was
aware that the sexually violent predators in Kansas were to be
held in a segregated unit within the prison system.  However, the
Court noted that the conditions within the unit were essentially
the same as conditions for other involuntarily committed persons
in mental hospitals.  Moreover, confinement under the Act was not
necessarily indefinite in duration, and the Act provided for
treatment.  Id., 521 U.S. at 363, 364, 365-368.  Thus, the
Supreme Court held that involuntary confinement under Kansas'
SVPA was not unconstitutional so long as such civilly-confined
persons are segregated from the general prison population and
afforded the same status as others who have been civilly
committed.  Id., 521 U.S. at 368-69.  See also Seling v. Young,
531 U.S. 250, 261062 (2001)(holding same with respect to the
State of Washington's SVPA).

    Here, the New Jersey SVPA is essentially the same as the
Kansas and Washington SVP statutes that were examined and upheld
as constitutional by the Supreme Court in Hendricks and Seling,
respectively.[5]  See Bagarozy v. Goodwin, Civil Action No. 08-468

_____

    [5]  Recently, the Supreme Court held constitutional under the
Necessary and Proper Clause, a federal statute that allowed a
district court to order the civil commitment of a sexually
dangerous federal prisoner beyond the date the prisoner would
otherwise be released.  United States v. Comstock, No. 08-1224,
__ U.S. __, 130 S.Ct. 1949 (May 17, 2010).  Although these
civilly committed persons remained confined at a federal prison,
namely, FCI Butner, the Court did not address their place of

13

(SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); In re Commitment of W.Z., 173 N.J. 109, 801 A.2d 205, 211 (2002). Therefore, this Court finds that Boss's transfer, with the SVP residents of the Kearny facility, to a segregated unit in the East Jersey State Prison does not, in and of itself, violate the U.S. Constitution's Due Process Clause.  Moreover, because the transfer has now been effected, plaintiff's claim for injunctive relief to prevent the transfer to EJSP is now rendered moot. Accordingly, the claim that plaintiff's transfer to a segregated unit within a prison facility is unconstitutional will be dismissed for failure to state a cognizable claim of a constitutional deprivation.

B.  Conditions of Confinement Claim

      Although plaintiff's transfer to a segregated unit within a prison facility is not, in and of itself, a constitutional violation, Boss makes additional allegations concerning the conditions of confinement at the EJSP facility.  For instance, he complains that he will be housed in a 23-hour lock-down facility. However, Boss also states that the living conditions are unsanitary and unhealthy, in violation of his constitutional rights.  He does admit that the residents were told that there would be a period of time needed to resolve issues concerning the living conditions, including the renovation of the space to make suitable living quarters for the civilly committed residents.

---

civil confinement as being unconstitutional.

14

See Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982)("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979),[6] within the bounds of professional discretion, Youngberg, 457 U.S. at 321-22. Specifically, in Youngberg, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties. Id. at 307. The Constitution is not concerned with de minimis restrictions on patients' liberties. Id. at 320. Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed." Seling, 531 U.S. at 265. While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061

---

[6] In Bell v. Wolfish, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose. 441 U.S. 520, 535-39, (1979).

(8th Cir. 2001)(applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Boss's main allegation with respect to the conditions of his confinement relates to his contention that he is now housed in a 23-hour lock down facility.  However, Boss acknowledges in his Complaint that these conditions are merely temporary until the "Ad Seg Unit" is renovated for the SVP residents.  At most, the administrators told plaintiff and the other SVP residents that it would take a month or two to complete renovations to accommodate the less restrictive and treatment-oriented environment suitable for civilly committed SVPs.

Moreover, even if plaintiff has temporary restrictions in yard activity and mobility, the Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme.  See Deavers v. Santiago, 243 Fed. Appx. 719, 721 (3d Cir. 2007)(applying Sandin v. Conner, 515 U.S. 472 (1995),[7] to segregated confinement of civilly committed SVPs). See also Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002)(likewise extending Sandin to civil commitment settings).  As stated above,

_____

[7]  In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.  See 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

16

Boss's complaints about the restrictions on his confinement are minimal and clearly temporary.  Consequently, this Court finds that Boss has failed to state a cognizable claim in this regard at this time.

Boss also alleges unsanitary or unhealthy conditions of confinement, namely, that there is poor air circulation, non-drinkable water, sewer smell, and an unsanitary kitchen and showers.  These allegations are speculative as Boss was not yet transferred to EJSP when he made these complaints based on hearsay.

Nevertheless, these alleged conditions clearly bear no reasonable relation to the purpose for which Boss and the other SVP residents are committed, and to the extent these uninhabitable living conditions are not addressed with the renovations, Boss may have a viable Fourteenth Amendment conditions of confinement claim.  In this regard, the Court is guided by the Third Circuit's determination in the context of a Fourteenth Amendment claim, as set forth in Hubbard v. Taylor, 538 F.3d 229 (3d Cir. 2008)("Hubbard II").  In Hubbard II, the Third Circuit held that requiring pretrial detainees (claims by pretrial detainees, like civilly committed persons, are governed by the Fourteenth Amendment) to sleep on a mattress on the floor in a cell holding three inmates for three to seven months did not constitute punishment in violation of the Fourteenth Amendment. 538 F.3d at 234-35.  The court rejected the Second Circuit's per

se ban on the practice in <u>Lareau v. Manson</u>, 651 F.2d 96 (2d Cir. 1981), and instead considered it "as part of the 'totality of the circumstances within [the] institution.'"  <u>Hubbard II</u>, 538 F.3d at 235 (quoting <u>Hubbard v. Taylor</u>, 399 F.3d 150, 160 (3d Cir. 2005)("<u>Hubbard I</u>")[8]).  The court then concluded that although the plaintiffs "did spend a substantial amount of time on floor mattresses," they had access to large day rooms and the record did not substantiate plaintiffs' claims that the use of floor mattresses caused disease or led to the splashing of human waste on the plaintiffs. <u>Id</u>.  After noting the efforts made by the jail to improve conditions, the court found "that Plaintiffs were not subjected to genuine privations and hardship over an extended period of time for purposes of their due process claim."  <u>Id</u>.

Based on the allegations in Boss's complaint, many of which are speculative (plaintiff had not yet been transferred to EJSP when he made these allegations concerning the poor living conditions at EJSP) at the time he filed his Complaint, this Court finds that plaintiff's allegations concerning the "totality of circumstances" surrounding his confinement are not sufficient at this time to suggest that he has been "subjected to genuine privations and hardship over an extended period of time for

---

[8]   <u>Hubbard I</u> is the predecessor to <u>Hubbard II</u>.  In <u>Hubbard I</u>, the Third Circuit remanded plaintiffs' case to the district court to apply the correct standard for a conditions of confinement claim by a detainee under the Fourteenth Amendment. 399 F.3d at 166-67.  The district court subsequently ruled in defendants' favor and plaintiffs appealed, resulting in <u>Hubbard II</u>.   538 F.3d at 230.

purposes of [his] due process claim." <u>See</u> <u>Hubbard II</u>, 538 F.3d at 235.  Therefore, the Court will dismiss the conditions of confinement claim, without prejudice, for failure to state a claim at this time.  To the extent that these conditions continue for a longer period of time than suggested by the NJDHS and NJDOC administrators, Boss may seek leave to re-open this case and file an amended pleading.[9]

C.   <u>Interference with the Mail Claim</u>

Boss next asserts that the delivery of his mail to the Annex, rather than directly to him at EJSP, violates his First Amendment rights.

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments.  <u>Jones v. Brown</u>, 461 F.3d 353, 358 (3d Cir. 2006), <u>cert</u>. <u>denied</u>, 549 U.S. 1286 (2007).[10]

_____

[9]   Should plaintiff so choose to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, Boss should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  <u>Id.</u>  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  <u>Id</u>.

[10]   In <u>Jones v. Brown</u>, the United States Court of Appeals for the Third Circuit held that the legal mail policy of state prison in opening legal mail outside the presence of the inmate violated the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff. 461 F.3d at 358.  The Third Circuit also has held that "a pattern

However, an inmate's constitutional right to send and receive mail may be restricted for legitimate penological interests. See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987). In Turner, the Supreme Court of the United States found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. Id. at 89. The Court established a balancing test pursuant to which courts analyze prohibitions on prisoners' exercise of their constitutional rights by considering the following four factors: (1) whether prohibiting an inmate from exercising a constitutional right is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising that right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives available that continue to serve the prison's interest without impinging constitutional rights. Turner, 482 U.S. at 89-91. The

_____

and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech. Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (applying the Turner analysis), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). Thus, the assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen may state a First Amendment claim. See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).

Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security.  Id.

The United States Court of Appeals for the Third Circuit has applied Turner in analyzing constitutional claims by civilly committed SVPs.  See Rivera v. Rogers, 224 Fed. Appx. 148, 2007 WL 934413 (3d Cir. March 29, 2007)(applying Turner in analyzing claims of SVPs that opening of their packages violated their First Amendment rights).  Other courts likewise have applied Turner when analyzing claims brought by civilly committed SVPs alleging First Amendment violations.[11]  See Willis v. Smith, 2005 WL 550528 (N.D. Iowa Feb. 28, 2005)(noting that status of SVPs was substantially similar to that of prisoners and applying Turner to SVP claims concerning mail handling procedures); Ivey v. Mooney, 2008 WL 4527792, at *4 n. 7 (D. Minn. Sept. 30, 2008)(applying Turner, but noting that a civil confinement is significantly different from a criminal confinement); Francis v. Watson, 2006 WL 2716452, at *3 (D.S.C. Sept. 22, 2006)(citing cases that have applied Turner in cases involving civilly confined persons); Marsh v. Liberty Behavioral Health Care, Inc.,

_____

[11]  Essentially, the First Amendment analysis under Turner mirrors the due process analysis under Youngberg; in both instances, courts must balance the constitutional interests of confined persons against the legitimate interests of the state-run institution in which they reside.  See Beaulieu v. Ludeman, 2008 WL 2498241, at *20 n. 15 (finding Turner to be consistent with Youngberg because "it will not allow a Program detainee's right to be restricted unless there is a valid institutional reason for doing so").

2008 WL 821623, at *5 (M.D. Fla. Mar. 27, 2008), aff'd 330 Fed.
Appx. 179 (11th Cir. 2009); Beaulieu v. Ludeman, 2008 WL 2498241,
at *20 (D. Minn. June 18, 2008).

In Rivera, the Third Circuit affirmed the district court's
ruling that a facility housing civilly committed SVPs has a
legitimate interest in both the safety of its facility and the
rehabilitation of its patients.  Rivera, 224 Fed. Appx. at 151
(citing Waterman v. Farmer, 183 F.3d 208, 215 (3d Cir.
1999)("[I]t is beyond dispute that New Jersey has a legitimate
penological interest in rehabilitating its most dangerous and
compulsive sex offenders.")).  Specifically, the court upheld as
constitutional the STU's policy that allows staff to open
packages not marked as "legal mail" to assure that the packages
do not contain contraband (i.e., items either harmful to staff
and residents, or detrimental to rehabilitation).  The court
found that plaintiff was free to send and receive mail so long as
the content of his mail was not sexually explicit.  Moreover, the
Third Circuit found no error in the district court's conclusion
that there were no ready alternatives to mail security and that
the STU's policy appeared to be the only viable alternative, thus
supporting the reasonableness of the mail policy.  Rivera, 224
Fed. Appx. at 151.

Here, this Court likewise finds that it is beyond dispute
that the staff at EJSP, where plaintiff and other SVP residents
are newly housed, has a legitimate interest in both the safety of

its facility and rehabilitating its patients.  As noted above, these civilly committed persons are convicted sexual predators, which makes safety at EJSP a very important concern.  The staff clearly must determine if any items coming through the mail pose a threat to the safety of the staff or the other residents.  They also must decide if any of the materials passing through the mail could be detrimental to a resident's therapy.  Consequently, as set forth by the Supreme Court and the Third Circuit, the Court must defer to the prison officials when it comes to issues of managing a safe and operational prison facility.  In this case, delivery of letters and packages at the Avenel facility located close by, where the staff is trained with respect to SVP issues unlike the general NJDOC staff at EJSP, assures that harmful materials are not being passed through the mail, but also allows for specialized treatment regarding SVP residents.  This new policy, which appears to be preliminarily instituted because of the recent transfer of the SVP residents to EJSP, clearly bears a rational relationship to both interests discussed above.  Moreover, in his interference with the mail claim, Boss does not allege a single incident where his mail has not been delivered or received.[12]  Rather, his only complaint seems to be that his mail is being sent to another facility instead of EJSP where he now

---

[12]  A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

resides.  Boss does not articulate a claim that prison officials
are intentionally delaying his mail.  He clearly admits that he
is free to use and receive mail and packages in general.
Therefore, the Court will dismiss this claim without prejudice at
this time, and allow Boss to file an amended pleading, consistent
with the pleading requirements of Rule 8(a)(2) and amended
pleading requirements of Rule 15 of the Federal Rules of Civil
Procedure, as discussed in fn. 10 of this Opinion, <u>supra</u>, if Boss
in fact wishes to pursue such a claim.

D.   <u>Interruption of Treatment Claim</u>

Finally, Boss asserts that therapy/treatment sessions have
been denied because of the transfer to EJSP.  He contends that he
has been denied the right to adequate treatment and reasonable
care applicable to civilly committed SVPs, in violation of the
Fourteenth Amendment.

The Fourteenth Amendment to the United States Constitution,
§ 1, guarantees that "[n]o State shall ... deprive any person of
life, liberty, or property, without due process of law."  This
due process guarantee has been interpreted to have both
procedural and substantive components, the latter which protects
fundamental rights that are so "implicit in the concept of
ordered liberty" that "neither liberty nor justice would exist if
they were sacrificed."  <u>Palko v. Conn.</u>, 302 U.S. 319, 325 (1937).
These fundamental rights include those guaranteed by the Bill of
Rights, as well as certain liberty and privacy interests

implicitly protected by the Due Process Clause, such as the right
to marry.  Washington v. Glucksberg, 521 U.S. 702, 720 (1997).
Substantive due process also protects against government conduct
that is so egregious that it "shocks the conscience," even where
the conduct does not implicate any specific fundamental right.
See United States v. Salerno, 481 U.S. 739, 746 (1987).

        Laws disturbing fundamental rights receive strict scrutiny
and will be upheld if they are "narrowly tailored to serve a
compelling state interest."  Reno v. Flores, 507 U.S. 292, 302
(1993).  However, regulations not implicating fundamental rights
(in other words, those claims attacking particularly egregious or
arbitrary governmental actions) are analyzed under the
deferential standard referred to as the rational basis review,
and will generally succeed only if the government action shocks
the conscience.  See Glucksberg, 521 U.S. at 728.

        With respect to Boss's claim, the Court construes said claim
as an assertion that he has a fundamental right to adequate
treatment as a civilly committed sex offender.  The Supreme Court
established that there exists a constitutionally protected right
of mentally retarded persons confined at a state institution to
minimally adequate treatment.  Specifically, the Supreme Court
held that there is a constitutional right of mentally disabled
persons confined at a state institution to "minimally adequate
habilitation", self-care treatment or training to the extent
necessary to protect their recognized fundamental rights to

25

safety and freedom from physical restraints.  <u>Youngberg</u>, 457 U.S.
at 316, 319 and 322.

The Supreme Court further held that, where a fundamental
right is at issue, a district court must balance "the liberty of
the individual and the demands of an organized society" to
determine whether such right has been violated.  <u>Youngberg</u>, 457
U.S. at 320.  Although restrictions burdening a fundamental right
generally receive strict scrutiny, in <u>Youngberg</u>, the Supreme
Court found that this sort of rigorous analysis would unduly
burden the ability of states, specifically their professional
employees, to administer mental health institutions.  <u>Id</u>. at 322.
Consequently, the Court concluded that "the Constitution only
requires that the courts make certain that professional judgment
was in fact exercised," because "[i]t is not appropriate for the
courts to specify which of several professionally acceptable
choices should have been made."  <u>Id</u>. at 321 (internal quotation
and citation omitted).  Thus, a decision, "if made by a
professional, is presumptively valid; liability may be imposed
only when the decision by the professional is such a substantial
departure from accepted professional judgment, practice, or
standards as to demonstrate that the person responsible actually
did not base the decision on such judgment."  <u>Id</u>. at 323.

In <u>Leamer v. Fauver</u>, 288 F.3d 532 (3d Cir. 2002), the United
States Court of Appeals for the Third Circuit held that New
Jersey's unique former statutory scheme for sex offenders that

26

predicated the term of sentence on a prisoner's response to treatment and created a right to treatment created a fundamental and cognizable liberty interest in treatment, for purposes of both procedural and substantive due process analyses. 288 F.3d at 545. Leamer was not a civilly committed sex offender like plaintiff here. Rather, Leamer was a convicted sex offender whose confinement and treatment were inextricably linked pursuant to statute. The sentencing court had classified Leamer as having a "mental aberration" and in need of "specialized treatment," which automatically subjected Leamer to the maximum incarceration permitted by law unless he is cured prior to that point. Leamer could not reduce his sentence through good behavior credits, parole policies or other credits. Instead, he could only shorten his incarceration through successful therapy, which was an "inherent and integral element" of the statutory scheme. Consequently, the Third Circuit found that deprivation of treatment would be a grievous loss not emanating from the sentence. Leamer, 288 F.3d at 544.

Apart from that recognized in Youngberg to prevent the violation of recognized fundamental rights to safety and freedom from physical restraints, this Court finds the Third Circuit's holding in Leamer to clearly extend to an involuntarily committed sex offender under New Jersey's SVPA. Like Leamer, the length of Boss's confinement under the SVPA is predicated on his response to treatment. Indeed, the provisions of the SVPA explicitly

27

recognize New Jersey's obligation to provide treatment to SVPs for their eventual release based on successful therapy. <u>See</u> <u>N.J.S.A</u>. 30:4-27.32(a)("If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue an order authorizing the involuntary commitment of the person to a facility designated for the custody, care and ***treatment*** of sexually violent predators")(emphasis added); <u>N.J.S.A</u>. 30:4-34(b)("The Division of Mental Health Services in the Department of Human Services shall provide or arrange for treatment for a person committed pursuant to this act.  Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators."); <u>N.J.S.A.</u> 30:4-27.36(a)(At any time during the involuntary commitment of a person under this act, if the person's treatment team determines that the person's mental condition has so changed that the person is not likely to engage in acts of sexual violence if released, the treatment team shall recommend that the Department of Human Services authorize the person to petition the court for discharge from involuntary commitment status"); <u>see</u> <u>also</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346, 367 (1997)(concluding from similarly-worded provisions of Kansas SVP Act that "the State has a statutory obligation to provide 'care and treatment for [persons adjudged sexually dangerous] designed to effect recovery ....")(alterations in original)(internal citations omitted).

Therefore, based on Youngberg and Leamer, this Court concludes that Boss's liberty interest in treatment is fundamental and cognizable for purposes of both procedural and substantive due process analyses.  But see Bailey v. Gardebring, 940 F.2d 1150, 1154 (8th Cir. 1991), cert. denied, 503 U.S. 952 (1992)(where the Eighth Circuit noted that Youngberg did not establish a right for the civilly committed to treatment per se; the Supreme Court only "held that the Constitution required only such 'minimally adequate training ... as may be reasonable in light of [the] liberty interest[ ] in safety and freedom from unreasonable restraints.'")(quoting Youngberg, 457 U.S. at 322). In Bailey, the Eighth Circuit concluded that plaintiff had no right to "psychiatric treatment to overcome a 'sexual offender condition'"  because he "was neither in danger during his civil commitment nor was he subject to any restraints beyond the ordinary incidents of any involuntary confinement."  Id. at 1153, 1154.  Citing Bailey, district courts in the Eighth Circuit have since concluded that civilly committed sexual predators have no substantive due process right to mental health treatment, adequate or otherwise.  See Semler v. Ludeman, 2010 WL 145275, at *26 (D. Minn. Jan. 8, 2010)("Because this Court has not recognized a constitutional right to effective 'treatment' in the context of civilly committed sex offenders, Plaintiffs [alleging substantive due process violations through ineffective treatment] have failed to allege a due process claim ....")(citing

Nicolaison v. Ludeman, 2008 WL 508549, at *8 (D. Minn. Feb. 11, 2008)(finding, in ultimately concluding that involuntarily committed sex offender's right to treatment is not "clearly established" for purposes of 28 U.S.C. § 2254(d)(1), that Youngberg "only recognized a right to 'minimally adequate' treatment that reduces the need for restraints," and not a "comparable right to treatment that facilitates release")).

Nevertheless, while this Court may recognize that Boss has a fundamental and cognizable liberty interest in treatment, based on the allegations and admissions by plaintiff in his Complaint and addendums, this Court also determines that there has been no procedural or substantive due process violations at this time.

With respect to Boss's right to procedural due process, there does not appear to be any basis to plaintiff's claim that there has been a categorical denial of therapy due to his transfer to EJSP's administrative segregation unit.  In Leamer, the Third Circuit, relying on Sandin, found that Leamer would face "significant obstacles" in establishing a procedural due process claim based on his placement on RAP (restricted activities program) status because the mere fact of placement in administrative segregation is not in and of itself enough to implicate a liberty interest.  Leamer, 288 F.3d at 546.  In the instant case, Boss is not actually confined in administrative segregation for the purpose of punishment, but rather, he and the other SVP residents at the Kearny facility were transferred to a

unit at EJSP separate and apart from the convicted prisoners.
Moreover, there is no absolute denial of treatment, only a
projected estimation that treatment might be delayed while the
transfer takes place and living quarters are made suitable for
the residents.

This Court likewise finds no substantive due process
violation at this time.  Substantive due process prevents the
government from engaging in conduct that "shocks the conscience,"
or interferes with rights "implicit in the concept of ordered
liberty."  <u>Glucksberg</u>, 521 U.S. at 721.  Under this standard,
Defendants' actions in denying Boss his statutory right to
treatment will be found unconstitutional under the Fourteenth
Amendment if they were so arbitrary or egregious as to shock the
conscience.  <u>See Leamer</u>, 288 F.3d at 546-47 (substantive due
process claim alleging inadequate treatment for committed sex
offender "must focus on the challenged abuse of power by
officials in denying [the plaintiff] the treatment regimen that
was statutorily mandated and was necessary in order for his
condition to improve, and thus for him to advance toward
release")

Here, despite Boss's initial allegation, defendants have not
categorically declined to provide any mental health treatment to
the SVP residents at EJSP, but only projected a short period for
disruption of treatment so as to accomplish the transfer and/or
renovation of the segregated unit at EJSP.  Thus, this Court

31

cannot readily conclude that Defendants' actions were conscience-shocking and in violation of Boss's substantive due process rights.  Indeed, plaintiff's allegation before his actual transfer to EJSP is merely speculative and it is not readily apparent that treatment would be disrupted for a significant time.

Thus, the Court concludes that treatment has not been denied to the SVP residents as alleged because there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation as alleged.  Any deviation in providing treatment appears to be speculative and merely temporary to accomplish the transfer and renovate the SVP quarters at EJSP.  Therefore, this Court concludes that the alleged short-lived disruption of therapy and treatment, if any, has not been shown to be so egregious as to render mental treatment at EJSP conscience-shockingly deficient.

Accordingly, Boss's claim alleging inadequate treatment will be dismissed without prejudice for failure to state a cognizable claim of a deprivation of a constitutional right at this time.

V.   <u>CONCLUSION</u>

For the reasons set forth above, plaintiff's Complaint will be dismissed without prejudice, in its entirety as against all named defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff may seek leave to re-open this case to file an amended pleading to cure the deficiencies noted herein.  An appropriate order follows.


<u>/s/JOSE L. LINARES</u>
United States District Judge

33